NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1132
_____

G&S LIVINGSTON REALTY, INC.,
Appellant

v.

CVS PHARMACY, INC.
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-10-cv-00303)
District Judge: Honorable Susan D. Wigenton
_____

Argued November 14, 2012

Before:  RENDELL, FUENTES and CHAGARES, Circuit Judges

(Opinion Filed: December 4, 2012)
_____

Agnes Antonian, Esq.
Kevin J. Coakley, Esq.
Nicole B. Dory, Esq.
Stephen V. Falanga, Esq.   **[ARGUED]**
 Connell Foley
85 Livingston Avenue
Roseland, NJ  07068
    *Counsel for Appellant*

Edith K. Altice, Esq.
Jason M. St. John, Esq.    **[ARGUED]**
Saul Ewing
500 East Pratt Street, Suite 900
Baltimore, MD  21202

William C. Baton, Esq.
Saul Ewing
Suite 1520
One Riverfront Plaza
Newark, NJ  07102

Ruth A. Rauls, Esq.
Saul Ewing
750 College Road East, Suite 100
Princeton, NJ  08540
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Appellant G&S Livingston Realty, Inc. appeals the District Court's denial of its motion for summary judgment and the District Court's grant of Appellee CVS Pharmacy, Inc.'s motion for summary judgment.  For the reasons discussed below, we will vacate and remand.

I.

The facts of this case are undisputed.  In June 1996, Lessor G&S Livingston Realty, Inc. ("G&S") entered a lease with Lessee Linens 'N Things, Inc. ("Linens") for retail space in the Livingston Retail Center (the "Lease").  The Lease included a Co-Tenancy provision that states:

2

Landlord represents and warrants that it intends to enter into leases and/or operating agreements with at least two (2) nationally recognized retail tenants occupying at least twenty-five thousand (25,000) square feet each for initial terms expiring on or about the expiration of the Initial Lease Term. After such two (2) tenants initially open for business, if at all, thereafter if fewer than two (2) tenants occupying the minimum co-tenancy percentage are open for regular business, Tenant shall have the option to pay, as alternative rent in lieu of Annual Minimum Rent, its monthly Gross Sales, as defined in Exhibit I, multiplied by the three percent (3%), such product not to exceed its monthly installment of Annual Minimum Rent, in advance on or before the tenth (10th) day of the calendar month next following the month during which such sales were made ("Alternative Rent"). Tenant shall deliver copies of all sales figures for the Premises for the preceding calendar month on or before the tenth (10th) day of each month. If such condition persists for a period of twelve (12) consecutive months or more, Tenant shall have the right to cancel and terminate this Lease upon thirty (30) days notice to Landlord, such notice to be given at any time prior to the date the condition giving rise to such termination right has been satisfied.

In connection with the Lease, Melville Corporation, Linens's parent company, executed an unconditional guaranty that required it to pay rent and other sums due under the Lease to G&S if Linens defaulted (the "Guaranty"). CVS Pharmacy, Inc. ("CVS"), the successor to Melville, assumed the Guaranty.

In May 2008, Linens defaulted on its obligations under the Lease and filed for bankruptcy. In December 2008, it filed a notice rejecting the Lease and vacated the leased premises. In February 2009, G&S and CVS executed a settlement agreement that obligated CVS to pay the past due amounts that Linens owed under the Lease but reserved CVS's rights to contest future demands for payments. Throughout 2009, G&S requested that CVS make payments that were due under the Lease, and CVS complied. CVS never assumed the Lease, and Linens did not assert any claims against G&S in its bankruptcy action.

3

In January 2010, CVS informed G&S that it was exercising Linens's rights under the Co-Tenancy provision of the Lease and terminating the Lease because there were fewer than two co-tenants in the Retail Center for twelve consecutive months. In addition, CVS demanded that G&S repay it the rent it had paid in 2009, reasoning that it was entitled to pay the Alternative Rent for that period, and under the Alternative Rent formula, it owed nothing in rent.

G&S brought suit against CVS, alleging among other things, that CVS breached the Guaranty, and seeking declaratory judgment that CVS was in material breach of the Guaranty and responsible for all accruing payments and expenses due under the Lease. G&S argued that CVS could not invoke the Co-Tenancy provision of the Lease because it was not a party to the Lease. G&S also argued that even if CVS could have exercised Linens's rights under the Lease, the Lease was terminated in 2008 under the common law doctrine of surrender and/or when the Lease was rejected in bankruptcy and thus, Linens's rights under the Co-Tenancy provision were no longer exercisable in 2010 when CVS attempted to assert them.

CVS filed counterclaims against G&S seeking declaratory relief that it was entitled to pay the Alternative Rent as of January 1, 2009 and that it was entitled to terminate the Lease. In addition, CVS alleged that G&S breached the Lease by demanding that CVS pay the Annual Minimum Rent in 2009 when it should have only had to pay the Alternative Rent, and that it was entitled to recoup what it had paid in rent during that year because under the Alternative Rent formula, it owed nothing.

4

Both G&S and CVS moved for summary judgment. The District Court denied G&S's motion and granted in part and denied in part CVS's motion. The Court held that the Lease was not terminated in 2008, and that CVS was allowed to exercise Linens's rights under the Co-Tenancy provision. The Court reasoned that, although it is a general rule that "when a creditor sues a guarantor but the principal debtor is not named in the action, the guarantor is not entitled to assert the claims of the principal debtor as defenses against the creditor," it is a well-established exception that "when the principal is insolvent, the guarantor may set-off the principal's claims against the creditor." G&S Livingston Realty, Inc. v. CVS Pharmacy, Inc., 2011 WL 6756948, at *3 (D.N.J. Dec. 21, 2011) (internal citation omitted). The Court explained that because in the instant case, Linens was insolvent, CVS was entitled to affirmatively exercise Linens's rights under the Lease, which allowed CVS to pay the Alternative Rent while there were fewer than two co-tenants in the Retail Center and to terminate the Lease if that condition persisted for twelve consecutive months. However, the Court also concluded that CVS could not recover the excess it paid over the Alternative Rent in 2009 because the Co-Tenancy provision gave CVS an *option* to pay the Alternative Rent, which it had failed to exercise for that period.

G&S appeals the District Court's ruling that the Lease did not terminate in 2008 and that CVS was able to exercise Linens's rights under the Lease and thereby pay nothing under the Guaranty.

We review a district court's denial and grant of summary judgment de novo. Pichler v. UNITE, 542 F.3d 380, 385 (3d Cir. 2008).

We conclude that the District Court erred in holding that under New Jersey law, a guarantor can affirmatively exercise a principal's rights under a lease when the principal is insolvent. It is black letter law that if a creditor sues a guarantor, and the guarantor is not a party to the contract between the creditor and the principal or intended as a third-party beneficiary to the agreement, the guarantor cannot assert a right under, or enforce, the principal's contract. First Nat'l Bank of N.J. v. Carlyle House, Inc., 102 N.J.Super. 300, 322 (N.J. Super. Ct. Ch. Div. 1968), aff'd, 107 N.J. Super. 389 (N.J. Super. Ct. App. Div. 1969), *certif. denied*, 55 N.J. 316 (N.J. 1970) ("A party cannot enforce provisions of a contract to which he is not a privy, unless it is clear that the parties to the contract intended to confer upon him the right to enforce it."). No authority has been cited to us that would permit a non-party, non-beneficiary, to exercise a right to terminate, or exercise an option under, a contract, as was done here. Here, CVS was not a party to the Lease between G&S and Linens nor was it intended as a third-party beneficiary to the agreement. Further, there is no language in the Lease, Guaranty, or settlement agreement that can be construed as granting CVS the ability to assert Linens's rights under the Lease. Accordingly, we will reverse the District Court's ruling that CVS could opt for the Alternative Rent and terminate the Lease.

CVS relies on case law that provides that, as an exception to this general rule, a guarantor may assert a principal's *claim* if the principal is insolvent, Coldwell Banker

Real Estate, LLC v. Plummer & Assoc., Inc., 2009 WL 3230840, at *2 (D.N.J. Oct. 2, 2009). However, that case law does not apply here because CVS was not asserting a "claim" against G&S.[12] G&S's failure to maintain two co-tenants in the Retail Center was not a breach of the Lease; it merely triggered Linens's option to pay the Alternative Rent and Linens's right to terminate the Lease if the condition persisted—rights that Linens did not exercise. Linens had no claim against G&S under the Lease, and neither did CVS.

Because we conclude that CVS could not, as a matter of law, affirmatively exercise Linens's rights under the Co-Tenancy provision, we do not find it necessary to decide whether the Lease was terminated in 2008, as, pursuant to the terms of the Guaranty, that does not impact CVS's obligations under the Guaranty. The Guaranty imposes an unconditional obligation on CVS that continues regardless of the status of the Lease.

---

[1] Appellant argues that even if Linens had a claim against G&S, CVS could not assert it because under New Jersey law, only sureties, and not guarantors, can assert a principal's claim against a creditor if the principal is insolvent. Because we conclude that Linens does not have a claim that it could assert against G&S, we do not find it necessary to resolve this issue of New Jersey law.

[2] Appellee cites Cinema North Corporation v. Plaza at Latham Associates, 867 F.2d 135 (2d Cir. 1989) in support of its contention that CVS can exercise Linens's contractual rights because Linens is insolvent. Cinema North, however, is clearly distinguishable. There, the Second Circuit Court of Appeals, applying New York law, held that a guarantor, who negotiated a lease on behalf of the principal, could bring suit seeking specific performance of a lease because the guarantor was presumed to have the principal's consent to do so, as the principal was a "corporation to be formed by, to be controlled by, and to have the same officers" as the guarantor. Id. at 139-40.

7

For the reasons stated above, we will vacate the order of the District Court and remand for entry of judgment against, and assessment of amounts due and owing from, CVS.